Opinion delivered June 5, 1886.

---

[No. 5002.]

Louis Roberts *v.* The State.

Theft—Intent—New Trial—Fact Case.—See the opinion *in extenso* and the statement of the case, for evidence *held* insufficient to support a conviction for theft from the person, in as much as it fails to show the necessary intent of appropriation at the time of the taking; wherefore a new trial should have been awarded.

Appeal from the District Court of Falls. Tried below before the Hon. Eugene Williams.

The conviction in this case was for theft of a watch chain from the person of one W. M. Feagle, in Falls county, Texas, on the nineteenth day of November, 1885. A term of two years in the penitentiary was the penalty assessed against the appellant.

W. M. Feagle was the first witness for the State. He testified that, during the year 1885, he operated a cotton gin in Marlin, Falls county, Texas, and during that time was the Marlin agent of the Waco Oil Works, for the purchase of cotton seed. On the nineteenth day of November of that year the witness owned the watch chain for the theft of which the defendant was now on trial. Witness wore the said chain attached to his watch and vest. On the afternoon of said November 19, 1885, the defendant, then a stranger to witness, came to the witness's gin and asked the purchasing price of cotton seed, saying that he had some to sell witness. Witness replied that he was paying seven dollars per ton. Defendant replied that Mr. Wells would pay him seven dollars and a quarter. Witness then told defendant that if Wells was buying seed from him, defendant, that he,

witness, would not buy from him at twenty-five cents per ton. Defendant left and returned that night at about half past seven o'clock, and told witness that he had some seed cotton in the Brazos bottom that he wanted to sell. Witness replied that he was satisfied that cotton offered for sale at night was stolen property. Other words passed, and witness ordered defendant off his premises. Defendant started toward the front gate of the gin yard. Witness followed to see that he left, and probably used some abusive language to the defendant. When defendant and witness got outside of the yard, the defendant turned upon witness with the remark: "Now, G—d d—n you, I have got you where I want you," and struck the witness a heavy blow on the breast with his fist. Witness then struck or struck at the defendant. Defendant made another thrust at witness, with, the witness thought, his open hand. The thrust was more of a "grab" than a blow. Defendant's hand passed across witness's breast, and witness thought, from the manner of the thrust and the noise it made, that defendant had struck at him with a knife, cutting his clothes. Witness stooped to get a stick from the ground, and defendant ran towards town. Witness returned to the gin house and proceeded to examine his clothing, which he expected to find cut in front. Witness discovered that his clothes had not been cut, but that his watch chain was gone, and turned to his fireman and remarked that the d—d rascal got his chain. Witness then went up town to look up defendant. He reported the matter to marshal Bryden, giving him a description of the defendant. Witness saw no more of the defendant on that night. He received his watch chain through marshal Bryden on the next day. The chain was taken without the witness's consent, and so suddenly that witness could not resist the taking. The theft was perpetrated at about eight o'clock on a moon light night, at a public, though not much frequented, place.

On or about December 29, 1885, defendant approached the witness at Clark's bank, in Marlin, and entered into conversation with him, during the course of which he told witness that he would pay witness thirty dollars to abandon the prosecution of this case. Witness replied that he had nothing to do with the case, and referred defendant to prosecuting attorney Rice. In that same conversation the defendant said to witness that he took the chain, but was drunk, and did not intend to steal it. Defendant had never worked for the witness, and witness did

not then nor ever owe the defendant a cent. Witness denied that he had ever made the statement in relation to this matter imputed to him by Mr. Norwood at a subsequent stage of this trial. Witness made a statement of the affair at the office of Mr. Shelton, but he did not say in that statement that he carried the defendant out of the gin yard, nor that he struck the defendant first. Witness may have used, and most probably did use, abusive language to the defendant as he was going out of the yard, but he did not touch the defendant.

H. Rinkelman testified, for the State, that the defendant was a tenant on his place in 1885. Defendant was in witness's store in Marlin, just after dark on the night of November 19, 1885. Witness asked him what he was doing. He replied that he was in the employ of W. M. Feagle, packing cotton at twenty-five cents per bale. Witness told defendant that he ought to be at his work, to which defendant replied that he had a man in his place. Defendant remained in the store but a few minutes. Between seven and eight o'clock on that night he, defendant, came into witness's saloon, which adjoins his store, and told witness that he and Feagle had had a little "fracas." He said that Feagle owed him fifty cents, which he refused to pay, and that they had a fight about it. He had Feagle's watch chain, either in his hand or in his pocket, at the time. He exhibited the watch chain, and said that he got the chain from Feagle in the "scrimmage." Witness remarked to defendant that the chain was ample pay for the fifty cents. Defendant made no reply, but laughed and left witness's premises. Witness went to and returned from supper, and shortly afterwards defendant, in custody of the city marshal and Mr. Reed, came to witness's store to get witness to go on his appearance bond. The witness declined. Witness picked the chain up from a box, between the screen and the bar counter. Witness was unable to say whether he found the chain on the box before or after defendant came back to the store in custody. It was his impression that he found the chain on the box before defendant and the officers came. The chain, while on the box, was not in a concealed place, but was exposed. Defendant neither claimed the chain as his, nor offered to dispose of it. The chain was worth between five and ten dollars.

Paul Schiblick testified, for the State, substantially as did Rinkelman, as to the various statements made at the store and saloon of Rinkelman, by the defendant. Witness saw Mr. Rinkelman find the chain on the box, but was unable to say posi-

tively whether he so found it before or after the defendant came back to the store with the officers, though he thought it was afterwards. While Rinkelman was at supper Mr. Feagle came into the store with a stick in his hand. A moment before Feagle came in the defendant stepped into the saloon department through the connecting door. About the same time that Feagle stepped in at the front door of the store, defendant stepped out at the front door of the saloon. Defendant could have seen Feagle when he entered the front door. When Feagle came in he said that he thought the defendant had cut his clothes. If he had then missed his watch chain he said nothing about it. Witness did not know by whom, or when, the chain was placed on the box. Defendant was drinking, but was not drunk on that night.

Marshal H. N. Bryden testified, for the State, that between seven and eight o'clock on the night of November 19, 1885, he was informed by Feagle that a negro, whom he described, had taken his watch chain. Witness and Feagle went in one direction in search of the defendant, and officer King in another, to a saloon where the witness, a short time before, saw the defendant under the influence of drink, negotiating for a drink of whisky on credit. Witness did not find defendant.

G. S. Cousins testified, for the State, that he was in Feagle's employ at the gin in Marlin on the evening of November 19, 1885, when the defendant came there to sell some cotton seed to Feagle. The defendant was not then, and had never been employed about the gin.

Buck Henry testified, for the State, that he was fireman at Feagle's gin on November 19, 1885. Witness paid little attention to the negotiations between defendant and Feagle. He knew that some harsh words passed between Feagle and defendant; that Feagle ordered defendant to leave, and followed him. When Feagle returned to the gin a few minutes later, he said to witness: "Look here; that d—d scoundrel has robbed me of my watch chain." His watch chain was gone. State closed.

J. A. Bedgood testified, for the defense, that he was in Rinkelman's store on the night of November 19, 1885, when Mr. Feagle came in and related the circumstances of a difficulty between himself and the defendant. Feagle said that the defendant tried to cut him, but said nothing about losing his watch chain. Witness did not see defendant at that time, though defendant may have been in the saloon. Witness had charge of

Rinkelman's business on the place occupied by defendant, and knew that defendant had no cotton seed to sell at that time.

P. P. Norwood testified, for the defense, that, on the morning of November 20, 1885, he heard Feagle make, in mayor Shelton's office, a statement of the circumstances of the trouble between himself and the defendant on the night before. He said that defendant came to him after dark with an offer to sell cotton; that he told defendant he regarded all cotton offered for sale after night fall as stolen cotton; that defendant replied that he did not want to deliver or sell that night, but wanted to know what price he could get; that he, Feagle, then ordered the defendant to leave, and carried him to the gate, and pushed or shoved him out, and again ordered him to leave; that defendant then said to him: "God d—n you, I am off your premises now, and am as good as you are," and struck him; that defendant then made another stroke at him, and he thought he was cut until he went to the light, and found that his watch chain was gone; and that defendant ran just as he picked up the stick, which he did when defendant struck his second blow.

The motion for new trial raised the questions discussed in the opinion.

*Martin & Dickinson*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

White, Presiding Judge. The appellant in this case is charged by bill of indictment with the theft of a watch chain from the person of W. M. Feagle. The only error complained of is the court's refusal to grant a new trial, the motion for which is based upon the insufficiency of the evidence to support the finding of the jury and the judgment of the court thereon.

There was no question made as to the property alleged to have been taken having passed from the manual possession of Feagle to that of the appellant, or as to the manual act by which the change was effected. The only question raised upon the facts is this: Was there in the mind of the appellant, at the time the change of manual possession was effected, an intention to deprive the owner of the value of the chain, and to appropriate it to the use or benefit of the appellant?

Otherwise stated, did the *animus furandi* exist at the time of the taking? We think not, and for the reasons following: It

appears from the evidence that the appellant and the prosecuting witness, Feagle, had an altercation growing out of a proposed sale of some cotton seed by the former to the latter; that in its progress appellant struck Feagle a blow of the hand about that portion of the breast to which the chain was attached; that Feagle then stooped to get a stick, and that, while he was in this stooping posture, appellant ran away in the darkness towards the business part of the town of Marlin, in which town the altercation occurred. It further appears that Feagle was not apprised of his loss until a short time afterwards, when he had gone to the light; that, shortly after the difficulty, appellant visited the saloon of one Rinkelman, detailed the particulars, at the same time exhibiting the chain, and stating that he had got it from Mr. Feagle in the "scrimmage." Appellant was shortly thereafter arrested by the city marshal, the chain being found by Rinkelman on a box in the front part of the saloon,—whether before or after appellant's arrest, was left in some doubt by the testimony.

Applying these facts to the solution of the question propounded, the court is constrained to say that they are insufficient to support the verdict. First of all, it is to be observed that there are none of the usual marks of premeditated design surrounding the taking, it having occurred while the appellant was being ejected from the premises of the prosecuting witness; second, that the change of possession was effected by the second of two blows stricken Feagle by appellant; third, that no presumption of guilty intent can fairly be drawn from the appellant's fleeing, the attempt of Feagle to procure a stick being an already sufficient motive to prompt flight; and, fourthly and lastly, that appellant's subsequent exhibition of the chain and accounting for its possession, and afterwards leaving it exposed to public view, is entirely inconsistent with the guilty intent of appropriation.

The charge of the learned judge who presided is a lucid and able exposition of the law as applicable to the questions raised by the facts; but because of the court's error in overruling the motion for a new trial, the judgment must be reversed and the cause remanded.

*Reversed and remanded.*